Jeffrey Morrison, MO Bar No. 44401
United States Department of Justice
Employment Litigation Section
Civil Rights Division
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 353-1845
(202) 514-1005 (fax)
Jeffrey.Morrison@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No.: |
| AMERICAN SAMOA GOVERNMENT, DEPARTMENT OF HUMAN AND SOCIAL SERVICES, | |
| Defendant. | JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff United States of America alleges:

1. The United States brings this action to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII). Specifically, this complaint alleges that Defendant violated Title VII, 42 U.S.C. § 2000e-2(a), by discriminating against an employee on the basis of her sex by maintaining a work environment hostile to her because she is a transgender woman.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action under 42 U.S.C. §§ 2000e-5(f), 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a), and 1345.

3. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3).

## THE PARTIES

4. Plaintiff is the United States of America, which is expressly authorized to bring this action under Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5. Defendant American Samoa Government (ASG) is a governmental body, and is specifically defined as a "State" for purposes of Title VII at 42 U.S.C. § 2000e(i). It is also a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

6.  The ASG employs approximately 5,000 people who work in thirty-three departments, including the Department of Human and Social Services (DHSS).

## THE EEOC CHARGE

7.  Simeonica Tuiteleleapaga worked for the DHSS from 1995 until 2022. At all times relevant to this action, Tuiteleleapaga was an "employee" of the ASG within the meaning of 42 U.S.C. § 2000e(f).

8.  Tuiteleleapaga is a transgender woman.

9.  On January 17, 2017, Tuiteleleapaga filed a timely charge of discrimination based on sex with the United States Equal Employment Opportunity Commission (EEOC).

10. In her charge of discrimination, Tuiteleleapaga alleged that in late 2016, she was subjected to discrimination based on her sex. Specifically, she alleged that the DHSS subjected her to a hostile work environment because she is a transgender woman.

11. Pursuant to Section 706 of Title VII, as amended, 42 U.S.C. § 2000e-5, the EEOC investigated the charge. The EEOC found reasonable cause to believe that Tuiteleleapaga was subjected to a hostile work environment based on her sex. It then attempted to resolve the charge through voluntary

conciliation efforts, but was unsuccessful and subsequently referred the matter to the Department of Justice.

12. All conditions precedent to filing of suit have been satisfied.

## FACTUAL ALLEGATIONS

13. As asserted in these factual allegations, the DHSS discriminated against Tuiteleleapaga in violation of Title VII by allowing the misconduct of the DHSS's Director, Meki Solomona, to create and maintain a work environment hostile to Tuiteleleapaga because she is transgender.

14. The DHSS is responsible for administering ASG's social service programs, including behavioral health, child care, substance abuse prevention, and supplemental nutrition for Women, Infants and Children.

15. In 2012, Solomona was appointed as the DHSS Director by ASG Governor Lolo Matalasi Moliga.

16. In this role, Director Solomona had responsibility for supervising the DHSS and served as a cabinet member to the Governor. Eight Assistant Directors (ADs) reported to Solomona and his Deputy Director, John Suisala.

## I. First Incident: *Solomona Directs Tuiteleleapaga to Work in Male-Only Duties*

17. After his appointment, Solomona repeatedly directed the DHSS's male employees to participate in a government-wide "Adopt-A-School" program initiated sometime in or after 2012 by Governor Moliga.

18. Solomona, through ADs, directed male DHSS employees to participate in the program during work hours by doing manual, labor-intensive tasks (*e.g.*, mowing lawns, raking leaves, power washing) to rehabilitate the landscape and structure of the local schools.

19. Solomona did not direct that the cisgender female employees participate in this program in these same traditionally "masculine" tasks.

20. Tuiteleleapaga has consistently presented exclusively as female and used only female pronouns during the entire time that she has worked at the DHSS.

21. In September 2016, Solomona told AD Josie Lutali to require Tuiteleleapaga and another transgender woman employee to participate in the Adopt-A-School program because "they are guys and they should go."

22. When AD Lutali told Tuiteleleapaga of Solomona's requirement, Tuiteleleapaga responded that being forced to participate in the male-only activity was discriminatory because she is not a male.

23. This was not the first time Solomona treated a transgender woman as if she were a male. Earlier, in or around 2014 or 2015, Solomona directed AD Lupe Fiso to have another transgender woman participate in the Adopt-A-School program alongside the male employees.

24. The other transgender employee complained to AD Fiso that she thought Solomona was discriminating against her because she is transgender, but participated in the program as directed. Fiso told her supervisor, Deputy Director John Suisala, about the employee's complaint.

25. Neither Deputy Director Suisala nor AD Fiso reported the employee's allegation to the EEO Office.

26. Likewise, AD Lutali did not report Tuiteleleapaga's allegation of discrimination to the EEO Office.

27. Shortly after Solomona directed AD Lutali to order that Tuiteleleapaga participate, Solomona changed the Adopt-A-School program, and Tuiteleleapaga never actually participated.

## II. During the Two Months Between The First and Second Incident

28. In the fall of 2016, the nonpartisan election for Governor of American Samoa took place.

29. Tuiteleleapaga actively supported and campaigned for her uncle as he ran against the incumbent, Governor Moliga.

30. Meanwhile, Director Solomona actively campaigned for Governor Moliga.

31. On November 8, 2016, Governor Moliga won re-election for a second term.

## III. Second Incident: *Solomona Harasses Tuiteleleapaga at a DHSS Staff Meeting*

32. On the afternoon of November 10, 2016, Director Solomona convened a DHSS-wide staff meeting to address the election.

33. Approximately 100-200 DHSS employees attended this staff meeting. Tuiteleleapaga, AD Fiso, and Tuiteleleapaga's immediate supervisor, Clinic Manager Siniva Samoa, were all at the meeting.

34. At the beginning of the staff meeting, Director Solomona, using a microphone, started the meeting by asking, "Is Simeonica [Tuiteleleapaga] here?" When she raised her hand, he said, "Simeonica, I don't want you here after this meeting." Tuiteleleapaga then questioned why she should

leave the meeting. In response, Solomona stated, "You come see me. Your position will be eliminated."

35. Solomona then interrogated Tuiteleleapaga for about two minutes in front of the entire DHSS staff meeting about whether Tuiteleleapaga should have been supporting her uncle in the election instead of the candidate Solomona preferred.

36. Solomona then said "I know about your status" and "Do you have papers?" Tuiteleleapaga started to cry. Solomona instructed her "don't cry" and "sit down." Solomona told Tuiteleleapaga, "You keep shooting your mouth" and then announced back to the group, "This is exactly the reason I don't want these kind of people here."

37. Solomona also opined about the futility of the employees complaining to Human Resources or attempting to sue over his conduct. He said, "I've got the upper hand. If you think about the law? I'm a lawyer too. If you think about HR policies? I know HR policies." He stated that he knew the head of HR.

38. Solomona then said to Tuiteleleapaga that "you are very disrespectable and my family is looking at you, they are right there, and you know what is going to happen." He then warned "and they are looking at

me right now. Be careful. Brains is better than emotions." Tuiteleleapaga understood this statement to be a threat of potential physical violence against her by Solomona's extended family members who were DHHS employees at the staff meeting.

39. Solomona then ordered Tuiteleleapaga to "get out." Then he quickly asked her, "Are you a girl or a boy?" She responded, "I'm a woman." He then ordered her, "Yeah? Take it off. And let us see if you are a woman."

40. Tuiteleleapaga, upset and crying, ran out of the room and left the premises.

41. Solomona then spent approximately forty more minutes during the meeting disparaging Tuiteleleapaga to her DHSS co-workers. He repeatedly referred to her as a "thing" or an "it," saying, for example: "This Thing has got away with this for years." Solomona also repeated his reference to Tuiteleleapaga removing her clothes to prove her gender. While referring to Tuiteleleapaga, he argued that "this type of lifestyle has no morals." He said "she lives as an 'it,'" and to make himself clear even spelled it out "I-T." AD Fiso, who was at the entire meeting, understood that Solomona's references to "thing" and "it" were referring to Tuiteleleapaga's transgender status.

42. An unidentified individual made an audio recording of Director Solomona's harassment of Tuiteleleapaga at the meeting, which was later widely circulated among the DHSS staff via social media and reported upon in the local press.

## IV. The Aftermath of the Staff Meeting

43. Solomona continued to harass Tuiteleleapaga after the staff meeting.

   *A.   Solomona Misgenders Tuiteleleapaga While Ordering Her Transfer*

44. By the close of the day on November 10, 2016, Director Solomona sent Tuiteleleapaga's supervisor, Manager Samoa, an email directing her, in relevant part, that:

   > You are hereby advised to instruct Simeonica Tuiteleleapaga that effective Monday, November 14th, he is to report to work at the Amouli WIC outlet.
   > Make sure his time card or time sheet is checked everyday as to time of arrival to work and time of clocking out at end of day.
   > I will need a weekly report on his attendance and performance.

45. In his email, Solomona repeatedly referred to Tuiteleleapaga using male pronouns.

46. This involuntary transfer to the Amouli WIC outlet facility would have increased Tuiteleleapaga's commute by approximately 45 minutes.

47. Manger Samoa called and spoke with Solomona the next morning about this direction and advised him against the transfer because she thought it was "wrong." Tuiteleleapaga was not transferred.

48. Solomona copied both Deputy Director Suisala and AD Lutali on the email to Samoa where he misgendered and sought to transfer Tuiteleleapaga.

49. Though Suisala and Lutali were not at the meeting on November 10, 2016, they heard about it from co-workers. AD Fiso complained to Suisala about Director Solomona's conduct at the meeting and his treatment of Tuiteleleapaga. Fiso was angry and disgusted about Solomona's personal comments about Tuiteleleapaga's gender, but she did not know to whom she should complain, other than Suisala, about Director Solomona's behavior.

    B.    *Tuiteleleapaga is Outed as Transgender*

50. Before Tuiteleleapaga went back to work on November 14, 2016, the local news radio aired a report about the incident at the all-staff meeting. The radio played a partial audio recording of the meeting, specifically the part of the meeting including Director Solomona's ranting comments toward Tuiteleleapaga about her transgender status and demanding that she undress to prove her gender during the November 10, 2016 meeting.

51. While Tuiteleleapaga was embarrassed about being subjected to Solomona's ridicule of her transgender status in front of all of her DHSS co-workers, the news reports heightened the level of embarrassment as she felt that everyone on the island now knew about it.

52. Worse for Tuiteleleapaga, Tuiteleleapaga and her husband had never had any reason to discuss her gender identity with their daughters, but she was forced to explain it to her teenage daughter when her daughter came home crying from school because the other kids were teasing her that her mother was a "she-male."

  C. *Solomona Tries to Terminate Tuiteleleapaga*

53. On Monday morning, November 14, 2016, shortly after Suisala reported to work, Director Solomona told Deputy Director Suisala to "start initiating paperwork to remove employees and delete positions" of certain employees who did not "support him." Solomona had specific employees that he had instructed Suisala to terminate, including Tuiteleleapaga and AD Fiso.

  D. *Tuiteleleapaga is Directed to Apologize to Solomona, and Does*

54. On Monday morning, November 14, 2016, Tuiteleleapaga also reported to work.

55. That morning, Manager Samoa immediately called Tuiteleleapaga into her office. She told Tuiteleleapaga that Tuiteleleapaga needed to apologize to Director Solomona for what had happened on Thursday at the staff meeting. Samoa told Tuiteleleapaga that Solomona wanted to terminate her, but that he did not yet have an official letter authorizing it.

56. Samoa took Tuiteleleapaga to Solomona's office, where only the three of them were present.

57. Tuiteleleapaga dropped to her knees, crying, asked for forgiveness, and apologized for her behavior. She was not sure what she was apologizing for other than having been involved in the political race. She apologized because she believed, based off Manager Samoa's comments, that she needed to apologize to keep her job, and she needed the job to provide for her family. So, she begged for her job on her knees.

58. Tuiteleleapaga was not terminated.

    E. *Solomona Denied Tuiteleleapaga Authorization for Work Travel*

59. Even after the November 14, 2016 apology meeting, Director Solomona harassed Tuiteleleapaga.

60. In early 2017, AD Lutali was prepared to take Tuiteleleapaga on a trip with her and others to receive training at a conference. Lutali prepared a

travel authorization that included Tuiteleleapaga and sent it to Director Solomona for approval.

61. Solomona called Lutali into his office and threatened to fire Lutali for including Tuiteleleapaga on the trip.

62. Lutali told Tuiteleleapaga that she could not go on the trip.

63. As directed by Solomona, Lutali did not propose taking Tuiteleleapaga on work travel again while Solomona remained the DHSS Director.

**V.    ASG Failed to Correct Solomona's Harassment of Tuiteleleapaga**

64. At all times relevant to this complaint, ASG did not have an effective EEO policy or procedure to deal with employee complaints of sexual discrimination or harassment, including those based on gender identity.

65. Multiple supervisors, including Suisala, Fiso, and Lutali, were aware of Director Solomona's attempts to assign Tuiteleleapaga and another female transgender employee to Adopt-A-School program duties otherwise performed exclusively by men.

66. Multiple supervisors, including Suisala, Fiso, Lutali, and Samoa, were aware of Director Solomona's conduct toward Tuiteleleapaga during the

November 10, 2016 meeting, including his comments directed at her transgender status.

67. Multiple supervisors, including Samoa, Suisala, and Lutali, received Director Solomona's email misgendering Tuiteleleapaga and directing her transfer to another work location.

68. None of Tuiteleleapaga's supervisors received training from ASG on how to handle sex discrimination or harassment.

69. None of Tuiteleleapaga's supervisors understood how to report Director Solomona's misconduct.

70. ASG failed to train its supervisors on how to effectively handle employees' complaints of discrimination based on sex, including a hostile work environment.

71. ASG failed to train its employees on how to effectively handle situations where they have been subjected to discrimination based on their sex, including a hostile work environment.

72. ASG failed to take corrective action after any incident of harassment that effectively prevented future harassment by Solomona.

73. Even after the November 10, 2016 staff meeting (where Solomona publicly harassed Tuiteleleapaga because of her gender identity), Director

Solomona's harassment of Tuiteleleapaga, such as his denial of work travel authorizations, continued unabated.

74. Even after Solomona's misconduct and harassment of Tuiteleleapaga was widely reported upon by the local press, Governor Moliga reappointed him as the Director of the DHSS.

75. On February 13, 2017, Solomona's reappointment by the Governor as the DHSS's Director was confirmed, despite discussions at his confirmation hearings about his misconduct at the November 10, 2016 staff meeting.

76. Solomona then served as the DHSS's Director until he died on December 11, 2017.

77. As a direct and proximate result of ASG's hostile work environment because of her sex, Tuiteleleapaga suffered damages including, but not limited to, emotional distress and loss of enjoyment of life.

## HOSTILE WORK ENVIRONMENT COUNT

78.  As described in the factual allegations set forth in paragraphs 1-77 above, ASG, through the DHSS, discriminated against Tuiteleleapaga by allowing the misconduct of Solomona to create and maintain a work environment hostile to Tuiteleleapaga because she is a transgender woman.

79.  The ASG violated Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting Tuiteleleapaga to a hostile work environment based on her sex, including her gender identity.

80.  Solomona was Tuiteleleapaga's supervisor for purposes of analyzing the ASG's liability for his harassment.

81.  ASG failed to exercise reasonable care to prevent or promptly correct Solomona's harassment of Tuiteleleapaga.

82.  Tuiteleleapaga did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by ASG to address Solomona's harassment or to avoid harm otherwise.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court grant the following relief:

(a) Award all appropriate monetary relief, including any lost back pay or lost benefits, to Tuiteleleapaga in an amount to be determined at trial to make her whole for all losses she suffered as a result of the discriminatory conduct as alleged in this complaint;

(b) Award compensatory damages to Tuiteleleapaga to fully compensate her for the pain, suffering, and physical ailments caused by ASG's discriminatory conduct, pursuant to and within statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a;

(c) Enjoin ASG from further discriminating and retaliating against Tuiteleleapaga;

(d) Order ASG to take remedial steps to ensure a non-discriminatory workplace for all DHSS employees, including implementation of appropriate anti-discrimination and anti-retaliation policies, and providing adequate training to all employees and officials regarding the handling of discrimination and retaliation complaints; and

(e) Award such additional relief as justice may require, together with the United States' costs and disbursements in this action.

## JURY DEMAND

Plaintiff United States hereby demands a jury trial of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Dated:  May 11, 2023

    Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division

VALERIE L. MEYER
Deputy Chief
Employment Litigation Section
Civil Rights Division

/s/ *Jeffrey Morrison*
JEFFREY MORRISON (MO Bar # 44401)
United States Department of Justice
Employment Litigation Section
Civil Rights Division
950 Pennsylvania Avenue NW
Washington, DC  20530
(202) 353-1845
(202) 514-1005 (fax)
Jeffrey.Morrison@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*